UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

STEPHEN JAMES O'GRADY                    Case No. 17-10001-KKS
STEPHANIE THERESE O'GRADY,               Chapter 7

       Debtors.

_____/

**MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)**
**(2601 SW Archer Road, Unit B-206, Gainesville, FL 32608)**
**(2601 SW Archer Road, Unit 216, Gainesville, FL 32608)**

---

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

      Pursuant to Local Rule 2002-2, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within twenty-one (21) days from the date of service of this paper. If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at <u>110 E. Park Avenue, Tallahassee, FL 32301,</u> and serve a copy on the movant's attorney, <u>Christopher R. Thompson, Esq., Burr & Forman LLP, 200 South Orange Avenue, Suite 800, Orlando, FL 32801, and any other appropriate persons</u> within the time allowed.

      If you file and serve an objection within the time permitted, the Court may schedule a hearing and you will be notified. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the paper, and will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

      CAMPUS USA CREDIT UNION ("Campus USA"), pursuant to 11 U.S.C. §§ 362(d)(1) and (2), hereby moves this Court for relief from the automatic stay with respect to certain real properties owned by a non-debtor entity, which properties have an address of 2601 SW Archer Road, Unit B-206, Gainesville, FL 32608 and 2601 SW Archer Road, Unit 216, Gainesville, FL 32608, to the extent that the automatic stay applies to these properties, if at all. The facts and circumstances supporting this Motion are set forth in (1) the Affidavit of Peter Subach in Support

of Campus USA Credit Union's Motion for Relief from the Automatic Stay attached hereto as **Exhibit A** (the "Affidavit"). In further support of this Motion, Campus USA states:

1.      Stephen and Stephanie O'Grady (collectively, the "Debtors") jointly filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U. S.C. §§ 101, *et seq.* (the "Code"), on January 3, 2017 (the "Petition Date"). Theresa M. Bender (the "Trustee") is the Trustee of the Debtors' bankruptcy estate.

2.      Prior to the Petition Date, Campus USA extended a loan to Bellex, LLP, a non-debtor limited liability partnership ("Bellex"). At all relevant times, the Debtors have been the only partners of Bellex.

3.      To secure the loan from Campus USA, Bellex executed two mortgages in favor of Campus USA. The mortgages secured two real properties owned by Bellex: one located at 2601 SW Archer Road, Unit B-206, Gainesville, Florida 32608, and one located at 2601 SW Archer Road, Unit D-216, Gainesville, Florida 32608 (collectively, the "Property").

4.      Both Debtors executed Guaranties, pursuant to which the Debtors personally guaranteed Bellex's performance of its obligations to Campus USA.

5.      Bellex and the Debtors defaulted on their obligations to Campus USA pursuant to the above loan documents, and Campus USA filed a complaint against Bellex and the Debtors in the action styled *Campus USA Credit Union v. Bellex, LLP, et al.*, Case No. 01-2016-CA-001741, in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida (the "State Court Case").

6.      Campus USA obtained a final judgment of foreclosure against Bellex and the Debtors in the amount of $299,328.14 on November 4, 2016 (the "Final Judgment"). A true and correct copy of which is attached hereto as **Exhibit B**.

7.      After Campus USA obtained the Final Judgment but before the foreclosure sale occurred, Debtors filed their bankruptcy petition, thereby initiating the instant action and canceling the foreclosure sale. To date, Bellex has not filed bankruptcy.

8.      At all relevant times and to date, Bellex was and is the sole owner of the Property. Debtors do not have an ownership interest in the Property. The Debtors have not listed the Property on their schedules; it is not property of the estate. No person claims the Property as homestead.

9.      Pursuant to the Final Judgment, as of the Debtors' bankruptcy filing date of January 3, 2017, Debtors owed the principal sum of $299,328.14. Pursuant to Florida Statutes, interest will accrue on the amount of the Final Judgment at the rate of 4.97% per annum.

10.     All conditions precedent to the relief demanded herein have been performed or have occurred, and Campus USA is entitled to an order modifying the stay in its favor.

## RELIEF REQUESTED

11.     Out of an abundance of caution, Campus USA seeks an order confirming that the automatic stay does not prevent Campus USA from exercising its *in rem* rights in and to the non-debtor Property. Campus USA submits that the stay does not apply to the Property because a third-party non-debtor, Bellex, owns the Property.

12.     To the extent the Court finds that the stay applies to Campus USA's *in rem* rights in the non-debtor Property, Campus USA is entitled to relief from stay for cause pursuant to 11 U.S.C. § 362(d)(1) because Campus USA's interest in the Property is not adequately protected.

13.     Campus USA further submits it is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(2), because the Debtors do not have any interest or equity in the Property, and the Property is not necessary for an effective reorganization.

14.     Movant requests that any order entered granting this Motion for Relief from the Automatic Stay be effective immediately upon entry of said order, and that the fourteen-day stay pursuant to Bankruptcy Rule 4001(a)(3) be waived.

WHEREFORE, Campus USA hereby requests the Court enter an order (i) determining that the stay does not apply to Campus USA's *in rem* rights in the Property and permitting Campus USA to reschedule the foreclosure sale of the Property; or alternatively, terminating the automatic stay with respect to the Property to permit Campus USA to enforce any and all of its *in rem* rights and remedies against the Property; (ii) waiving the 14-day stay of an Order granting this Motion for Relief pursuant to Bankruptcy Rule 4001(a)(3); and (iii) for such other and further relief as the Court deems just and appropriate.

Dated this 13th day of February, 2017.

Respectfully submitted,

*/s/ Christopher R. Thompson*
**Christopher R. Thompson**
Florida Bar No. 93102
E-mail: crthompson@burr.com
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Phone: (407) 540-6600
Facsimile: (407) 540-6601
*Attorneys for Campus USA Credit Union*

## <u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that on February 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will serve by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case: **Barbara A. Cusomano, Esquire** (barbaradebtlaw@gmail.com); **U.S. Trustee** (USTPRegion21.TL.ECF@usdoj.gov) and **Theresa M. Bender** (tmbenderch7@yahoo.com) and by U.S. Mail, postage prepaid, to **Stephen and Stephanie O'Grady**, P.O. Box 140366, Gainesville, FL 32614 and all recipients on the attached creditor's mailing matrix.


       */s/ Christopher R. Thompson*
       Christopher R. Thompson

29058743 v1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In re:

STEPHEN JAMES O'GRADY                    Case No. 17-10001-KKS
STEPHANIE THERESE O'GRADY,               Chapter 7

     Debtors.

_____/

## AFFIDAVIT OF PETER SUBACH IN SUPPORT OF CAMPUS USA CREDIT UNION'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

STATE OF FLORIDA
COUNTY OF ALACHUA

**BEFORE ME,** the undersigned authority duly authorized to administer oaths and take acknowledgments, personally appeared Peter Subach, as Special Accounts Manager for Campus USA Credit Union, to me well known, who being first duly sworn, deposes and says as follows:

1.    I am older than eighteen years of age, *sui juris*, and otherwise competent to testify as to the matters set forth in this Affidavit.

2.    I am currently employed as Special Accounts Manager with Campus USA Credit Union (hereinafter referred to as "Campus USA") and am authorized to make the statements contained herein.

3.    As part of my duties in said position, I have reviewed my files and records, which are kept in the regular course of my employer's business. As a result of said review and analysis, I have personal knowledge of the matters contained herein.

4.    On or about March 14, 2007, Bellex, LLP ("Bellex") executed and delivered to Campus USA, the payee therein, that certain Promissory Note, as amended, pursuant to which Bellex became obligated to Campus USA in the principal sum of ONE HUNDRED FIFTY-ONE THOUSAND NINE HUNDRED TWENTY AND NO/100 DOLLARS ($151,920.00) or for such

29074760 v1

EXHIBIT A

principal advanced to Bellex (hereinafter referred to as the "Loan 63 Promissory Note"). A true and correct copy of the Loan 63 Promissory Note is attached hereto as **Exhibit 1**.

5.      To secure the indebtedness evidenced by the Loan 63 Promissory Note, Bellex, then the owner of the hereinafter described subject property, executed and delivered to Campus USA that certain Mortgage, which was recorded on March 26, 2007 in O.R. Book 3569, Page 935, of the Public Records of Alachua County, Florida (hereinafter referred to as the "Loan 63 Mortgage"), which encumbers certain residential real and personal property located in Alachua County, Florida (hereinafter referred to as the "Unit B-206"), which has an address of 2601 SW Archer Road, Unit B-206, Gainesville, Florida 32608, and is more particularly described as:

> Unit B-206 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in the Official Records Book 3452, Page 1231, of the Public Records of Alachua County, Florida.
>
> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

A true and correct copy of the Loan 63 Mortgage is attached hereto as **Exhibit 2**.

6.      On or about March 14, 2007, Bellex executed and delivered to Campus USA, the payee therein, that certain Promissory Note, as amended, pursuant to which Bellex became obligated to Campus USA in the principal sum of ONE HUNDRED FIFTY-ONE THOUSAND NINE HUNDRED TWENTY AND NO/100 DOLLARS ($151,920.00) or for such principal advanced to Bellex (hereinafter referred to as the "Loan 64 Promissory Note"). A true and correct copy of the Loan 64 Promissory Note is attached hereto as **Exhibit 3**.

7.      To secure the indebtedness evidenced by the Loan 64 Promissory Note, Bellex, then the owner of the hereinafter described subject property, executed and delivered to Campus USA that certain Mortgage, which was recorded on March 26, 2007 in O.R. Book 3569, Page 747, of the Public Records of Alachua County, Florida (hereinafter referred to as the "Loan 64

Mortgage"), which encumbers certain residential real and personal property located in Alachua County, Florida (hereinafter referred to as the "Unit D-216" and collectively with Unit B-206, the "Property"), which has an address of 2601 SW Archer Road, Unit D-216, Gainesville, Florida 32608 and is more particularly described as:

> Unit D-216 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in the Official Records Book 3452, Page 1231, of the Public Records of Alachua County, Florida.
>
> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

A true and correct copy of the Loan 64 Mortgage is attached hereto as **Exhibit 4**.

8.      As an inducement to and in consideration for the extension of credit by Campus USA to Bellex, on or about March 14, 2007, Debtor, STEPHEN J. O'GRADY, executed and delivered to Campus USA that certain Guaranty (hereinafter referred to as "Guaranty 1"). A true and correct copy of Guaranty 1 is attached hereto as **Exhibit 5**.

9.      As an inducement to and in consideration for the extension of credit by Campus USA to Bellex, on or about March 14, 2007, Debtor, STEPHANIE O'GRADY, executed and delivered to Campus USA that certain Guaranty (hereinafter referred to as "Guaranty 2"). A true and correct copy of Guaranty 2 is attached hereto as **Exhibit 6**.

10.     Pursuant to the terms of Guaranty 1 and Guaranty 2 (hereinafter referred to collectively as the "Guaranties"), STEPHEN J. O'GRADY and STEPHANIE O'GRADY (the "Debtors") agreed to jointly and severally guarantee the due and prompt performance of all obligations and the due and prompt payment of the indebtedness of Bellex to Campus USA.

11.     Bellex and the Debtors defaulted on their obligations to Campus USA pursuant to the above loan documents, and Campus USA filed a complaint against Bellex and the Debtors in the action styled *Campus USA Credit Union v. Bellex, LLP, et al.*, Case No. 01-2016-CA-

001741, in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida (the "State Court Case").

12.    Campus USA obtained a final judgment against Bellex and the Debtors in the amount of $299,328.14 on November 4, 2016 (the "Final Judgment"). A true and correct copy of the Final Judgment is attached hereto as **Exhibit 7**.

13.    Pursuant to the Final Judgment, a foreclosure sale of the Property was scheduled to occur on January 17, 2017. (Final Judgment ¶ 3). The Debtors filed their suggestion of bankruptcy in the State Court Case, thereby canceling the foreclosure sale.

14.    Pursuant to the Final Judgment, as of the Debtors' bankruptcy filing date of January 3, 2017, Debtors owed the principal sum of $299,328.14.

15.    Pursuant to Florida Statutes, interest will accrue on the amount of the Final Judgment at the rate of 4.97% per annum.

16.    Bellex is the owner of the Property; Debtors do not have an ownership interest in the Property.

17.    Debtors are the only partners in Bellex.

18.    There exists little if any equity in Bellex's interest in the Property.

FURTHER, AFFIANT SAYETH NAUGHT.

**[Remainder of page deliberately left blank.]**

CAMPUS USA CREDIT UNION

*Peter Subach*

By: Peter Subach
Its: Special Accounts Manager

SWORN TO AND SUBSCRIBED
before me this _____ day of
February, 2017, by Peter Subach,
who is personally known to me.

NOTARY PUBLIC, STATE OF FLORIDA

Signature: _Teresa H Facey_
Print Name: _Teresa H. Facey_
My Commission Expires: _May 13, 2020_

> TERESA H. FACEY
> MY COMMISSION # FF 976098
> EXPIRES: May 13, 2020
> Bonded Thru Notary Public Underwriters



| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ██08-63 | Bellex, LLP | | 03/14/07 | DB |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $151,920.00 | Not Applicable | 7.650% | 03/13/22 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
### (Commercial - Single Advance)

State of Florida's Documentary Stamps have been affixed to the security instrument which secures this Note and will be cancelled pursuant to law.

**DATE AND PARTIES.** The date of this Promissory Note (Note) is March 14, 2007. The parties and their addresses are:

**LENDER:**
CAMPUS USA CREDIT UNION
P.O. Box 147029
Gainesville, Florida 32614-7029
Telephone: (352) 335-9090

**BORROWER:**
BELLEX, LLP
a Florida Limited Liability Partnership
PO Box 140366
Gainesville, Florida 32614

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$151,920.00 (Principal)** plus interest from March 14, 2007 on the unpaid Principal balance until this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **7.650 percent (Interest Rate)**.

A. **Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time under the terms of the Loan, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Florida usury laws under Fla. Stat. § 687.

D. **Accrual.** Interest accrues using an Actual/365 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
Florida Doc Stamp. A(n) Florida Doc Stamp fee of $532.00 payable from the loan proceeds.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

**6. PAYMENT.** I agree to pay this Note in 180 payments. This Note is amortized over 360 payments. I will make 179 payments of **$1,078.51** beginning on April 13, 2007, and on the 13th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due March 13, 2022.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**7. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**8. LOAN PURPOSE.** This is a business-purpose loan transaction.

Bellex, LLP
Florida Promissory Note
FL/4Xnatalie00005900005586027031207N



St. Cloud, MN Exs̲̲̅e̲r̲a̅

Initials _____
Page 1



**9. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage - 2601 SW Archer Road  B-206 | Bellex, LLP |

**10. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

In addition, you may also have rights under a "statutory lien". A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations I have with you. If you have a statutory lien, you may without further notice, impress and enforce my statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Note that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.



You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

F. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees of 10 percent of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**17. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

A. Property Insurance. I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

B. Flood Insurance. Flood insurance is not required at this time. It may be required in the future should the property be included in an updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

C. Insurance Warranties. I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**18. APPLICABLE LAW.** This Note is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**19. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**20. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**21. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**22. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**23. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**24. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**25. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

26. WAIVER OF TRIAL FOR ARBITRATION. You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

27. WAIVER OF JURY TRIAL. If the parties do not opt for arbitration, then all of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

28. SIGNATURES. By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

Bellex, LLP

By
Stephen J. O'Grady, Managing Member

By
Stephanie O'Grady, Managing Member

Return To:
EQUITY LAND TITLE, L.L.C.
ONE BOCA PLACE
2255 GLADES ROAD, SUITE 411-E
BOCA RATON, FL 33431
UNIV-B-206

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2324607 11 PGS
2007 MAR 26 02:56 PM BK 3569 PG 935
J. K. "BUDDY" IRBY
CLERK OF CIRCUIT COURT
ALACHUA COUNTY, FLORIDA
CLERK13   Receipt#323614
Doc Stamp-Mort:        532.00



2324607

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL DUE UPON MATURITY IS APPROXIMATELY $115,616.98, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Return to: The Cypress Group, LLC, 921 North Mills Avenue, Orlando, Florida 32803
This document was prepared by: CAMPUS USA Credit Union, P.O. Box 147029, Gainesville, Florida 32614-7029
State of Florida's Documentary Stamp Tax required by law in the amount of $532.00 has been paid to the Clerk of the Circuit Court (or the County Comptroller, if applicable) for the County of Alachua, State of Florida.

---

Space Above This Line For Recording Data

---

# MORTGAGE

---

**DATE AND PARTIES.**  The date of this Mortgage (Security Instrument) is March 14, 2007.  The parties and their addresses are:

MORTGAGOR:
    **BELLEX, LLP**
    A Florida Limited Liability Partnership
    PO Box 140366
    Gainesville, Florida 32614

LENDER:
    CAMPUS USA CREDIT UNION
    Organized and existing under the laws of Florida
    P.O. Box 147029
    Gainesville, Florida  32614-7029

**1. CONVEYANCE.**  For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, the following described property:

Unit B-206 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in the Official Records Book 3452, Page 1231 of the Public Records of Alachua County, Florida.

The land described herein is not the homestead of the mortgagor(s), and neither the mortgagor(s) nor the

---

EXHIBIT
2

Cloud, MN Exper̃x

INSTRUMENT # 2324607
11 PGS

mortgagor(s) spouse, nor anyone for who support the mortgagor(s) is responsible, resides on or adjacent to said land.

The property is located in Alachua County at 2601 SW Archer Road, B-206, Gainesville, Florida 32608.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

    **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. ████08-63, dated March 14, 2007, from Mortgagor to Lender, with a loan amount of $151,920.00 and maturing on March 13, 2022.

    **B. All Debts.** All present and future debts made within 20 years from the date of this Security Instrument from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

    **C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $303,840.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    **A.** To make all payments when due and to perform or comply with all covenants.

    **B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

    **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.



INSTRUMENT # 2324607
11 PGS

**7. CLAIMS AGAINST TITLE.**   Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due.  Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment.  Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument.  Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.**  Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property.  This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. TRANSFER OF AN INTEREST IN THE MORTGAGOR.**  If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:

    **A.** A beneficial interest in Mortgagor is sold or transferred.

    **B.** There is a change in either the identity or number of members of a partnership or similar entity.

    **C.** There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.

However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

**10. WARRANTIES AND REPRESENTATIONS.**   Mortgagor makes to Lender the following warranties and representations which will continue as long as this Security Instrument is in effect:

    **A. Power.**  Mortgagor is duly organized, and validly existing and in good standing in all jurisdictions in which Mortgagor operates.  Mortgagor has the power and authority to enter into this transaction and to carry on Mortgagor's business or activity as it is now being conducted and, as applicable, is qualified to do so in each jurisdiction in which Mortgagor operates.

    **B. Authority.**   The execution, delivery and performance of this Security Instrument and the obligation evidenced by this Security Instrument are within Mortgagor's powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which Mortgagor is a party or to which Mortgagor is or any of Mortgagor's property is subject.

    **C. Name and Place of Business.**  Other than previously disclosed in writing to Lender, Mortgagor has not changed Mortgagor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name.  Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve Mortgagor's existing name, trade names and franchises.

**11. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.**   Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary.  Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property.  Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent.  Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent.  Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance.  Such replacement of personal property will be deemed subject to the security

©1996 Bankers Systems, Inc., St. Cloud, MN *Express*

Initials _____
Page 3

INSTRUMENT # 2324687
11 PGS

interest created by this Security Instrument.   Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property.  Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection.  Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**12. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance.  Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.  If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**13. ASSIGNMENT OF LEASES AND RENTS.**  Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

**A.** Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

**B.** Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.  Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies.  The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed.  Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.  Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent.  Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds.  When Lender so directs in writing, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender.  Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses.  Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.  As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.  Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law.  If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender.  If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.  Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent.  Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent.  Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts.  Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all



INSTRUMENT # 2324607
11 PGS

liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**14. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Business Termination.** Mortgagor merges, dissolves, reorganizes, ends its business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying Lender, there is a material change in Mortgagor's business, including ownership, management, and financial conditions.

**N. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**15. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

INSTRUMENT # 2324607
11 PGS

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees of 10 percent of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

INSTRUMENT # 2324607
11 PGS

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**18. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the

INSTRUMENT # 2324687
11 PGS

rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**20. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. CO-SIGNERS.** If Mortgagor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**22. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

**23. APPLICABLE LAW.** This Security Instrument is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**24. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**25. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**26. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**27. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's

INSTRUMENT # 2324607
11 PGS

obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**28. AGREEMENT TO ARBITRATE.** Lender or Mortgagor may submit to binding arbitration any dispute, claim or other matter in question between or among Lender and Mortgagor that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as Lender and Mortgagor agree to in writing. For purposes of this section, this Transaction includes this Security Instrument and any other document relating to the Secured Debts, and proposed loans or extensions of credit that relate to this Security Instrument. Lender or Mortgagor will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

Lender and Mortgagor must consent to arbitrate any Dispute concerning the Secured Debt secured by real estate at the time of the proposed arbitration. Lender may foreclose or exercise any powers of sale against real property securing the Secured Debt underlying any Dispute before, during or after any arbitration. Lender may also enforce the Secured Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

Lender or Mortgagor may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to Lender or Mortgagor; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

Lender and Mortgagor acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among Lender and Mortgagor involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Security Instrument, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Security Instrument or another writing.

**29. WAIVER OF TRIAL FOR ARBITRATION.** Lender and Mortgagor understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, Lender and Mortgagor voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**30. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

©1996 Bankers Systems, Inc., St. Cloud, MN *Exper̃ẽ*™

Initials
Page 9

INSTRUMENT # 2324607
11 PGS

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL DUE UPON MATURITY IS APPROXIMATELY $115,616.98, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

MORTGAGOR:

Bellex, LLP

By
Stephen J. O'Grady, Managing Member

(Witness)

(Witness)

By
Stephanie O'Grady, Managing Member

(Witness)

(Witness)

INSTRUMENT # 2324607
11 PGS

STATE OF FLORIDA
COUNTY OF ALACHUA

**ACKNOWLEDGMENT.**
**(Business or Entity)**

_____ OF _____, _____ OF _____ ss.

This instrument was acknowledged before me this ___14th___ day of ___March___, ___2007___ by
Stephen J. O'Grady - Managing Member of Bellex, LLP a Limited Liability Partnership on behalf of the Limited
Liability Partnership. He/she is personally known to me or has produced ___FL DL_____
as identification.

My commission expires: 9/26/07

_Erika L Folsom_
(Notary Public)

ERIKA L. FOLSOM
MY COMMISSION # DD 523494
EXPIRES: September 26, 2007
Bonded Thru Notary Public Underwriters

STATE OF FLORIDA
COUNTY OF ALACHUA

**(Business or Entity)**

_____ OF _____, _____ OF _____ ss.

This instrument was acknowledged before me this ___14th___ day of ___March___, ___2007___ by
Stephanie O'Grady - Managing Member of Bellex, LLP a Limited Liability Partnership on behalf of the Limited
Liability Partnership. He/she is personally known to me or has produced ___FL DL_____
as identification.

My commission expires: 9/26/07

_Erika L Folsom_
(Notary Public)

ERIKA L. FOLSOM
MY COMMISSION # DD 523494
EXPIRES: September 26, 2007
Bonded Thru Notary Public Underwriters

©1996 Bankers Systems, Inc., St. Cloud, MN _Expert_™

Initials _____
Page 11

D-216

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ██08-64 | Bellex, LLP | | 03/14/07 | DB |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $151,920.00 | Not Applicable | 7.650% | 03/13/22 | Commercial |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
(Commercial - Single Advance)

State of Florida's Documentary Stamps have been affixed to the security instrument which secures this Note and will be cancelled pursuant to law.

**DATE AND PARTIES.** The date of this Promissory Note (Note) is March 14, 2007. The parties and their addresses are:

LENDER:
    CAMPUS USA CREDIT UNION
    P.O. Box 147029
    Gainesville, Florida 32614-7029
    Telephone: (352) 335-9090

BORROWER:
    BELLEX, LLP
    a Florida Limited Liability Partnership
    PO Box 140366
    Gainesville, Florida 32614

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

   A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

   B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

2. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $151,920.00 (Principal) plus interest from March 14, 2007 on the unpaid Principal balance until this obligation is accelerated.

3. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **7.650 percent (Interest Rate)**.

   A. **Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time under the terms of the Loan, until paid in full.

   B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

   C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Florida usury laws under Fla. Stat. § 687.

   D. **Accrual.** Interest accrues using an Actual/365 days counting method.

4. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

   A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

   Florida Doc Stamp. A(n) Florida Doc Stamp fee of $532.00 payable from the loan proceeds.

5. **REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

   A. **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Amount of Payment. I will pay this late charge promptly but only once for each late payment.

6. **PAYMENT.** I agree to pay this Note in 180 payments. This Note is amortized over 360 payments. I will make 179 payments of $1,078.51 beginning on April 13, 2007, and on the 13th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due March 13, 2022.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to any charges that I owe other than principal and interest then to interest that is due, and finally to principal that is due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

7. **PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

8. **LOAN PURPOSE.** This is a business-purpose loan transaction.

---

Bellex, LLP
Florida Promissory Note
FL/4Xnatelie00005900005586028031207N



EXHIBIT
3

t. Cloud, MN *Exbert™*

Initials
Page 1

**9. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Mortgage · 2601 SW Archer Road<br>D-216 | Bellex, LLP |

**10. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**11. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**12. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**13. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

In addition, you may also have rights under a "statutory lien". A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Note that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.



You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

**F. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees of 10 percent of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**16. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**17. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

**B. Flood Insurance Is Required.** I will insure the real property securing the Loan against hazards caused by flooding as described by other documents I sign for the Loan.

**C. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**18. APPLICABLE LAW.** This Note is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**19. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**20. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**21. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**22. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**23. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**24. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**25. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitration any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**26. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**27. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**28. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.


BORROWER:

Bellex, LLP

By
Stephen J. O'Grady, Managing Member

By
Stephanie O'Grady, Managing Member

Return To:
EQUITY LAND TITLE, L.L.C.
ONE BOCA PLACE
2255 GLADES ROAD, SUITE 411-E
BOCA RATON, FL 33431

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2324549 11 PGS
2007 MAR 26 02:17 PM BK 3569 PG 747
J. K. "BUDDY" IRBY
CLERK OF CIRCUIT COURT
ALACHUA COUNTY, FLORIDA
CLERK13   Receipt#323585
Doc Stamp-Mort:      532.00



2324549

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL DUE UPON MATURITY IS APPROXIMATELY $115,616.98, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Return to: The Cypress Group, LLC, 921 North Mills Avenue, Orlando, Florida 32803
This document was prepared by: CAMPUS USA Credit Union, P.O. Box 147029, Gainesville, Florida 32614-7029
State of Florida's Documentary Stamp Tax required by law in the amount of $532.00 has been paid to the Clerk of the Circuit Court (or the County Comptroller, if applicable) for the County of Alachua, State of Florida.

Space Above This Line For Recording Data

# MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is March 14, 2007. The parties and their addresses are:

MORTGAGOR:
**BELLEX, LLP**
A Florida Limited Liability Partnership
PO Box 140366
Gainesville, Florida 32614

LENDER:
**CAMPUS USA CREDIT UNION**
Organized and existing under the laws of Florida
P.O. Box 147029
Gainesville, Florida 32614-7029

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, the following described property:

Unit D-216 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in Official Records Book 3452, Page 1231 of the Public Records of Alachua County, Florida.

The land described herein is not the homestead of the mortgagor(s), and neither the mortgagor(s) nor the mortgagor(s) spouse, nor anyone for who support the mortgagor(s) is responsible, resides on or adjacent to said land.

Bellex, LLP
Florida **Mortgage**
FL/4Xnatalie0000590000585028031207Y


EXHIBIT
4



INSTRUMENT # 2324549
11 PGS

The property is located in Alachua County at 2601 SW Archer Road
D-216, Gainesville, Florida 32608.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. ███08-64, dated March 14, 2007, from Mortgagor to Lender, with a loan amount of $151,920.00 and maturing on March 13, 2022.

**B. All Debts.** All present and future debts made within 20 years from the date of this Security Instrument from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

**C. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $303,840.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

**A.** To make all payments when due and to perform or comply with all covenants.

**B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

**C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.



INSTRUMENT # 2324549
11 PGS

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:

   **A.** A beneficial interest in Mortgagor is sold or transferred.

   **B.** There is a change in either the identity or number of members of a partnership or similar entity.

   **C.** There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.

However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

**10. WARRANTIES AND REPRESENTATIONS.** Mortgagor makes to Lender the following warranties and representations which will continue as long as this Security Instrument is in effect:

   **A. Power.** Mortgagor is duly organized, and validly existing and in good standing in all jurisdictions in which Mortgagor operates. Mortgagor has the power and authority to enter into this transaction and to carry on Mortgagor's business or activity as it is now being conducted and, as applicable, is qualified to do so in each jurisdiction in which Mortgagor operates.

   **B. Authority.** The execution, delivery and performance of this Security Instrument and the obligation evidenced by this Security Instrument are within Mortgagor's powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which Mortgagor is a party or to which Mortgagor is or any of Mortgagor's property is subject.

   **C. Name and Place of Business.** Other than previously disclosed in writing to Lender, Mortgagor has not changed Mortgagor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve Mortgagor's existing name, trade names and franchises.

**11. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security

©1996 Bankers Systems, Inc., St. Cloud, MN *Exßerß*

Initials



INSTRUMENT # 2324549
11 PGS

interest created by this Security Instrument.  Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property.  Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection.  Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**12. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance.  Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.  If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**13. ASSIGNMENT OF LEASES AND RENTS.**  Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.  Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies.  The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed.  Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.  Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent.  Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds.  When Lender so directs in writing, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender.  Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses.  Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment.  As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law.  If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender.  If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.  Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent.  Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent.  Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts.  Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all



INSTRUMENT # 2324549
11 PGS

liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**14. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Business Termination.** Mortgagor merges, dissolves, reorganizes, ends its business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying Lender, there is a material change in Mortgagor's business, including ownership, management, and financial conditions.

**N. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**15. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.



INSTRUMENT # 2324549
11 PGS

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees of 10 percent of the Principal sum due or a larger amount as the court judges as reasonable and just, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.



INSTRUMENT # 2324549
11 PGS

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**18. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the

©1996 Bankers Systems, Inc., St. Cloud, MN ExPere<sup></sup>

Initials 

7

INSTRUMENT # 2324549
11 PGS

rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**20. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. CO-SIGNERS.** If Mortgagor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**22. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

**23. APPLICABLE LAW.** This Security Instrument is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**24. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**25. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**26. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**27. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's

INSTRUMENT # 2324549
11 PGS

obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**28. AGREEMENT TO ARBITRATE.** Lender or Mortgagor may submit to binding arbitration any dispute, claim or other matter in question between or among Lender and Mortgagor that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as Lender and Mortgagor agree to in writing. For purposes of this section, this Transaction includes this Security Instrument and any other document relating to the Secured Debts, and proposed loans or extensions of credit that relate to this Security Instrument. Lender or Mortgagor will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

Lender and Mortgagor must consent to arbitrate any Dispute concerning the Secured Debt secured by real estate at the time of the proposed arbitration. Lender may foreclose or exercise any powers of sale against real property securing the Secured Debt underlying any Dispute before, during or after any arbitration. Lender may also enforce the Secured Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

Lender or Mortgagor may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to Lender or Mortgagor; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

Lender and Mortgagor acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among Lender and Mortgagor involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Security Instrument, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Security Instrument or another writing.

**29. WAIVER OF TRIAL FOR ARBITRATION.** Lender and Mortgagor understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, Lender and Mortgagor voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**30. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.



INSTRUMENT # 2324549
11 PGS

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL DUE UPON MATURITY IS APPROXIMATELY $115,616.98, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCES MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

MORTGAGOR:

Bellex, LLP

By _____
Stephen J. O'Grady, Managing Member

_____
(Witness)

_____
(Witness)

By _____
Stephanie O'Grady, Managing Member

_____
(Witness)

_____
(Witness)

Bellex, LLP
Florida Mortgage
FL/4Xnatalie00005900005586028031207Y
©1996 Bankers Systems, Inc., St. Cloud, MN ExpereS™

Initials
Page 10



INSTRUMENT # 2324549
11 PGS

STATE OF FLORIDA
COUNTY OF ALACHUA.
**ACKNOWLEDGMENT.**
**(Business or Entity)**

_____ OF _____, _____ OF _____ ss.

This instrument was acknowledged before me this ___14th___ day of ___March___, ___2007___ by Stephen J. O'Grady - Managing Member of Bellex, LLP a Limited Liability Partnership on behalf of the Limited Liability Partnership. He/she is personally known to me or has produced FLDL▮▮▮▮▮▮▮ as identification.

My commission expires: 9/26/07     _Erika L. Folsom_
(Notary Public)

> ERIKA L. FOLSOM
> MY COMMISSION # DD 523494
> EXPIRES: September 26, 2007
> Bonded Thru Notary Public Underwriters

STATE OF FLORIDA
COUNTY OF ALACHUA
**(Business or Entity)**

_____ OF _____, _____ OF _____ ss.

This instrument was acknowledged before me this ___14th___ day of ___March___, ___2007___ by Stephanie O'Grady - Managing Member of Bellex, LLP a Limited Liability Partnership on behalf of the Limited Liability Partnership. He/she is personally known to me or has produced FL DL▮▮▮▮▮▮▮ as identification.

My commission expires: 9/26/07     _Erika L. Folsom_
(Notary Public)

> ERIKA L. FOLSOM
> MY COMMISSION # DD 523494
> EXPIRES: September 26, 2007
> Bonded Thru Notary Public Underwriters

# GUARANTY

(Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is March 14, 2007. The parties and their addresses are:

**LENDER:**
> **CAMPUS USA CREDIT UNION**
> P.O. Box 147029
> Gainesville, Florida 32614-7029
> Telephone: (352) 335-9090

**BORROWER:**
> **BELLEX, LLP**
> a Florida Limited Liability Partnership
> PO Box 140366
> Gainesville, Florida 32614

**GUARANTOR:**
> **STEPHEN J. O'GRADY**
> 7375 NW 115th Road
> Alachua, Florida 32615

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

**B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

**C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

Promissory notes or other agreements, No. ████ 08-63, dated March 14, 2007, from Bellex, LLP (Borrower) to you, in the amount of $151,920.00 and No. ████ 08-64, dated March 14, 2007, from Bellex, LLP (Borrower) to you, in the amount of $151,920.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation, in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

Stephen J. O'Grady
Florida **Guaranty**
FL/4XXXcathy0098540000545102703O507Y                                                        Cloud, MN Expera™                    Page 1



**EXHIBIT**

**5**

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower or I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

In addition, you may also have rights under a "statutory lien". A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Guaranty that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but

Stephen J. O'Grady
Florida **Guaranty**
FL/4XXXcathy0098540000545102703050 7Y            ©1996 Bankers Systems, Inc., St. Cloud, MN *Experts*™

Initial 
Page 2

are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

**21. WAIVER OF TRIAL FOR ARBITRATION. You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.**

**22. WAIVER OF JURY TRIAL. If the parties do not opt for arbitration, then all of the parties to this Guaranty knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Guaranty or any other documents relating to the Debt or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.**

**23. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

Stephen J. O'Grady
Individually

# GUARANTY
(Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is March 14, 2007. The parties and their addresses are:

LENDER:
    **CAMPUS USA CREDIT UNION**
    P.O. Box 147029
    Gainesville, Florida 32614-7029
    Telephone: (352) 335-9090

BORROWER:
    **BELLEX, LLP**
    a Florida Limited Liability Partnership
    PO Box 140366
    Gainesville, Florida 32614

GUARANTOR:
    **STEPHANIE O'GRADY**
    7375 NW 115th Road
    Alachua, Florida 32615

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

    **A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

    **B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

    **C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

Promissory notes or other agreements, No. ███08-63, dated March 14, 2007, from Bellex, LLP (Borrower) to you, in the amount of $151,920.00 and No. ███08-64, dated March 14, 2007, from Bellex, LLP (Borrower) to you, in the amount of $151,920.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following occur:

    **A. Payments.** I fail to make a payment in full when due.

Stephanie O'Grady
Florida Guaranty
FL/4XXXcathy0098540000545102703050 7Y



EXHIBIT
6

Cloud, MN *Experi*™

Initials ___



Page 1

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower or I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

In addition, you may also have rights under a "statutory lien". A "statutory lien" means your right under state or federal law to establish a right in, or claim to, my shares and dividends to the extent of any outstanding financial obligations that I have with you. If you have a statutory lien, you may without further notice, impress and enforce the statutory lien on my shares and dividends to the extent of any sums due and payable under the terms of this Guaranty that I fail to satisfy.

Your set-off and statutory lien rights do not apply to an account or other obligation where my rights arise only in a representative capacity. They also do not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check or share draft when the dishonor occurs because you set-off against any of my accounts, or exercised your statutory lien rights. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off or statutory lien rights.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but

are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Florida, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing and executed by you and me. This Guaranty is the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. INTERPRETATION.** Wherever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Guaranty and any other document relating to the Debt, and proposed loans or extensions of credit that relate to this Guaranty. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning the Debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing the Debt underlying any Dispute before, during or after any arbitration. You may also enforce the Debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Guaranty, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Guaranty or another writing.

**21. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**22. WAIVER OF JURY TRIAL.** If the parties do not opt for arbitration, then all of the parties to this Guaranty knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Guaranty or any other documents relating to the Debt or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**23. SIGNATURES.** By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_[signature]_

Stephanie O'Grady
Individually

---

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT,
IN AND FOR ALACHUA COUNTY, FLORIDA

CAMPUS USA CREDIT UNION,

      Plaintiff,

vs.                                CASE NO. 2016-CA-1741

BELLEX, LLP, a Florida limited liability
partnership, et al.,

      Defendants.

_____/

## FINAL JUDGMENT

    This action came before the Court. On the evidence presented

IT IS ADJUDGED that:

1.    Plaintiff, CAMPUS USA CREDIT UNION, is due

| | |
|---|---|
| Principal (both loans) | $ 276,642.06 |
| Interest to November 4, 2016 | $ 15,950.65 |
| Late Fees | $ 862.80 |
| Attorneys' fees total | $ 2,542.50 |
| Court costs, now taxed | $ 2,030.13 |
| Service of Process | $ 600.00 |
| Title Search | $ 700.00 |
| Subtotal | $ 299,328.14 |
| | |
| **TOTAL** | **$ 299,328.14** |

    that shall bear interest pursuant to Florida Statutes.

    2.    Plaintiff holds a lien for the total sum superior to all claims or estates of defendant(s) on the following described property in Alachua County, Florida:

        Unit B-206 of University Commons Condominiums I, according to
        the Declaration of Condominium recorded August 30, 2006, in the
        Official Records Book 3452, Page 1231, of the Public Records of
        Alachua County, Florida.
        and

EXHIBIT 7

Unit D-216 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in the Official Records Book 3452, Page 1231, of the Public Records of Alachua County, Florida.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

Property address: 2601 SW Archer Road, Unit B-206, Gainesville, FL 32608; and
Property address: 2601 SW Archer Road, Unit 216, Gainesville, FL 32608

3.     If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this judgment are not paid, the clerk of this court shall sell the property at public sale on **January 17, 2017** to the highest bidder for cash, except as prescribed in paragraph 4, at the Alachua County Family/Civil Justice Center, in accordance with section 45.031, Florida Statutes, by electronic sale beginning at **11:00 a.m.** on the prescribed date at https://www.alachua.realforeclose.com.

4.     Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title. If plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

5.     On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

6.     On filing the certificate of sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.

7.     Pursuant to Section 21.06 of the Declaration of Condominium Establishing University Commons Condominiums I ("Condominium Declaration"), recorded in the Official Records of Alachua County, Florida at Book 3452, Page 1231 on August 30, 2006, "[t]he liability of a first mortgagee or its successor who acquires title to a Unit by foreclosure or by deed in lieu of foreclosure for unpaid assessments that become due prior to the mortgagee's acquisition of title is limited to the lesser of: (1) the unit's unpaid common expenses and regular periodic assessments which accrued or came due during the six (6) months immediately preceding the acquisition of

title and for which payment in full has not been received by the Association; or (2) one (1%) percent of the original mortgage debt." The Condominium Declaration thus limits the liability Plaintiff, should Plaintiff obtain title in and to the foreclosed property through the instant foreclosure. See Coral Lakes Community Assoc., Inc. v. Busey Bank, N.A., 30 So.3d 579, 585 (Fla. 2d DCA 2010).

8.    Jurisdiction of this action is retained to enter further orders that are proper, including, without limitation, a deficiency judgment.

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 220 S. MAIN STREET, GAINESVILLE, FLORIDA WITHIN 10 DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT GAINESVILLE AREA LEGAL AID, THREE RIVERS LEGAL SERVICES, TELEPHONE: 386-752-5960, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT LEGAL AID FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

ORDERED in Gainesville, Alachua County, Florida, this _4_ day of November, 2016.

Circuit Judge

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the Final Judgment of Foreclosure

has been furnished via U.S. Mail and/or Email to all parties on the Service List on November

__8__ , 2016.


**Baya W. Harrison, Esquire,**
200 S. Orange Avenue, Suite 800
Orlando, FL  32801

**Barbara  A. Cusumano, Esquire**
(barbaradebtlaw@gmail.com),
2727 NW 43rd St., Suite 2A,
Gainesville, FL 32606; and

**Elizabeth A. Martin, Esquire**
(martin@scruggs-carmichael.com),
One SE First Ave.,
Gainesville, FL 32601.

_____
Judicial Assistant/Attorney

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT,
IN AND FOR ALACHUA COUNTY, FLORIDA

CAMPUS USA CREDIT UNION,

      Plaintiff,

vs.                                                    CASE NO. 2016-CA-1741

BELLEX, LLP, a Florida limited liability
partnership, et al.,

      Defendants.

_____/

## FINAL JUDGMENT

    This action came before the Court. On the evidence presented

    IT IS ADJUDGED that:

1.    Plaintiff, CAMPUS USA CREDIT UNION, is due

| | |
|---|---|
| Principal (both loans) | $ 276,642.06 |
| Interest to November 4, 2016 | $ 15,950.65 |
| Late Fees | $ 862.80 |
| Attorneys' fees total | $ 2,542.50 |
| Court costs, now taxed | $ 2,030.13 |
| Service of Process | $ 600.00 |
| Title Search | $ 700.00 |
| Subtotal | $ 299,328.14 |
| | |
| **TOTAL** | **$ 299,328.14** |

that shall bear interest pursuant to Florida Statutes.

    2.    Plaintiff holds a lien for the total sum superior to all claims or estates of defendant(s) on the following described property in Alachua County, Florida:

        Unit B-206 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in the Official Records Book 3452, Page 1231, of the Public Records of Alachua County, Florida.
        and

EXHIBIT B

Unit D-216 of University Commons Condominiums I, according to the Declaration of Condominium recorded August 30, 2006, in the Official Records Book 3452, Page 1231, of the Public Records of Alachua County, Florida.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.

Property address: 2601 SW Archer Road, Unit B-206, Gainesville, FL 32608; and
Property address: 2601 SW Archer Road, Unit 216, Gainesville, FL 32608

3.     If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this judgment are not paid, the clerk of this court shall sell the property at public sale on **January 17, 2017** to the highest bidder for cash, except as prescribed in paragraph 4, at the Alachua County Family/Civil Justice Center, in accordance with section 45.031, Florida Statutes, by electronic sale beginning at **11:00 a.m.** on the prescribed date at https://www.alachua.realforeclose.com.

4.     Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title. If plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

5.     On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

6.     On filing the certificate of sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.

7.     Pursuant to Section 21.06 of the Declaration of Condominium Establishing University Commons Condominiums I ("Condominium Declaration"), recorded in the Official Records of Alachua County, Florida at Book 3452, Page 1231 on August 30, 2006, "[t]he liability of a first mortgagee or its successor who acquires title to a Unit by foreclosure or by deed in lieu of foreclosure for unpaid assessments that become due prior to the mortgagee's acquisition of title is limited to the lesser of: (1) the unit's unpaid common expenses and regular periodic assessments which accrued or came due during the six (6) months immediately preceding the acquisition of

title and for which payment in full has not been received by the Association; or (2) one (1%) percent of the original mortgage debt." The Condominium Declaration thus limits the liability Plaintiff, should Plaintiff obtain title in and to the foreclosed property through the instant foreclosure. See Coral Lakes Community Assoc., Inc. v. Busey Bank, N.A., 30 So.3d 579, 585 (Fla. 2d DCA 2010).

8.    Jurisdiction of this action is retained to enter further orders that are proper, including, without limitation, a deficiency judgment.

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 220 S. MAIN STREET, GAINESVILLE, FLORIDA WITHIN 10 DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT GAINESVILLE AREA LEGAL AID, THREE RIVERS LEGAL SERVICES, TELEPHONE: 386-752-5960, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT LEGAL AID FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

ORDERED in Gainesville, Alachua County, Florida, this _4_ day of November, 2016.

_____

Circuit Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Final Judgment of Foreclosure has been furnished via U.S. Mail and/or Email to all parties on the Service List on November 8 , 2016.

**Baya W. Harrison, Esquire,**
200 S. Orange Avenue, Suite 800
Orlando, FL  32801

**Barbara  A. Cusumano, Esquire**
(barbaradebtlaw@gmail.com),
2727 NW 43rd St., Suite 2A,
Gainesville, FL 32606; and

**Elizabeth A. Martin, Esquire**
(martin@scruggs-carmichael.com),
One SE First Ave.,
Gainesville, FL 32601.

_____
Judicial Assistant/Attorney

Label Matrix for local noticing
1129-1
Case 17-10001-KKS
Northern District of Florida
Gainesville
Mon Feb 13 12:00:29 EST 2017

Campus USA Credit Union
c/o Christopher R. Thompson, Esq.
Burr and Forman LLP
200 S. Orange Ave., Suite 800
Orlando, FL 32801-6404

Florida Dept. of Labor/Employment Security
c/o Florida Dept. of Revenue
P.O. Box 6668
Tallahassee, FL 32314-6668

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Loretta E. Lynch
Office of the Attorney General
Main Justice Bldg., Rm. 511
Tenth & Constitution
Washington, DC 20530-0001

Stephanie Therese O'Grady
PO Box 140366
Gainesville, FL 32614-0366

Stephen James O'Grady
PO Box 140366
Gainesville, FL 32614-0366

U.S. Attorney (Tallahassee Office)
111 N. Adams Street
Fourth Floor
Tallahassee, FL 32301-7736

(p)U S SECURITIES AND EXCHANGE COMMISSION
ATLANTA REG OFFICE AND REORG
950 E PACES FERRY RD NE STE 900
ATLANTA GA 30326-1382

Advanced Auto Parts
AAP Financial Services
PO Box 742063
Atlanta, GA 30374-2063

American Express Bank FSB
c/o Zwicker & Associates
10751 Deerwood Park Blvd., Suite 100
Jacksonville, FL 32256-4835

Ameris Bank
Attn: Bankruptcy Dept.
PO Box 3668
Moultrie, GA 31776-3668

Amex
Correspondence
Po Box 981540
El Paso, TX 79998-1540

BB&T
Attn: Bankruptcy Department
6010 Golding Center Dr.
Winston Salem, NC 27103-9815

BBVA Compass
P.O. Box 830696
Birmingham, AL 35283-0696

Bank Of America
Nc4-105-03-14
Po Box 26012
Greensboro, NC 27420-6012

Bank of America, N.A.
P.O. Box 982238
El Paso, TX 79980-0001

Barclay Card
P.O. Box 13337
Philadelphia, PA 19101-3337

Barclays Bank Delaware
100 S West St
Wilmington, DE 19801-5015

Campus USA Credit Union
c/o Baya Harrison, Esq.
Burr & Forman LLP
200 S. Orange Avenue, Suite 800
Orlando, FL 32801-6404

Catherine Fleming
c/o Bogin, Munns and Munns
2700 NW 43rd, Suite C
Alachua, FL 32616

Chase Card
Attn: Correspondence
Po Box 15298
Wilmington, DE 19850-5298

Chase Card Services
Correspondence Dept
Po Box 15278
Wilmington, DE 19850-5278

Citibank/The Home Depot
Citicorp Cr Srvs/Centralized Bankruptcy
Po Box 790040
S Louis, MO 63179-0040

Conpass Bank
PO Box 1566
Birmingham, AL 35201-1566

D&S LTD
13809 Research Boulevard
Suite 800
Austin, TX 78750-1211

Delton Hines
c/o Morgan and Morgan
20 N. Orange Ave., Suite 1600
Orlando, FL 32801-4624

Discover Financial
Po Box 3025
New Albany, OH 43054-3025

Gulf Coast Collection Bureau
P.O. Box 21239
Sarasota, FL 34276-4239

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Kubota Credit
4400 Ammon Carter Blvd., Suite 100
Ft. Worth, TX 76155-2695

Monica Cook
c/o Law office of Nooney and Roberts
1680 Emerson Street
Gainesville, FL 32607

PayPal Credit
PO Box 105658
Atlanta, GA 30348-5658


Robert S. Dooley
PO Box 5351
Gainesville, FL 32627-5351

Scott & Nolder
65 E. State Street, Suie 200
Columbus, OH 43215-4277

Sheffield Financial
PO Box 580229
Charlotte, NC 28258-0229


Stan Forrom
6608 NW 40th Drive
Gainesville, FL 32653-8336

Suntrust Bank
655 West Broadway
San Diego, CA 92101-8590

Suntrust Bank
Attn:Bankruptcy Dept
Po Box 85092 Mc Va-Wmrk-7952
Richmond, VA 23285-5092


Syncb/Sams Club
P.O. Box 930981
Atlanta, GA 31193-0981

Turkey Creek Master Homeowners Assn.
118200 Turkey Creek Blvd.
Alachua, FL  32615

Ultimate Towing of Gainesville, Inc.
907 SW 3rd Street
Gainesville, FL 32601-7935


University Commons Condo Assn
PO Box 357640
Gainesville, FL  32635-7640

White Oaks Homeowners Assoc.
766 Turkey Creek
Alachua, FL 32615-9311

United States Trustee +
110 E. Park Avenue
 Suite 128
Tallahassee, FL 32301-7728


Theresa M. Bender +
P.O. Box 14557
Tallahassee, FL 32317-4557

Barbara A. Cusumano +
Barbara A. Cusumano, Attorney at Law
2727 NW 43rd Street, Suite 2A
Gainesville, FL 32606-6632

Secretary of the Treasury +
U.S. Treasury Department
15th & Pennsylvania Ave.
Washington, DC 20220-0001


Internal Revenue Service +
P.O. Box 7346
Philadelphia, PA 19101-7346

Christopher Robert Thompson +
Burr and Forman LLP
200 South Orange Ave
Suite 800
Orlando, FL 32801-6404


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


U.S. Securities & Exchange Commission
Branch of Reorganization
3475 Lenox Rd., N.E. Suite 100
Atlanta, GA 30326-1323

Internal Revenue Service
STOP 5720
400 West Bay Street, #35045
Jacksonville, FL 32202


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Bellex, LLP

(d)Campus USA Credit Union
c/o Christopher R. Thompson, Esq.
Burr and Forman LLP
200 S. Orange Ave., Suite 800
Orlando, FL 32801-6404

(u)Equipment Direct, Inc.

(u)Sheffield Financial

(u)Stepehn O'Grady of Florida, Inc.

(u)Stephen O'Grady of Florida Inc.

(du)Stephen O'Grady of Florida, Inc.

(u)Stephen O'Grady, Inc.

(u)Ulitmate Towing, Inc.

(u)Ultimate Towing, Inc.

End of Label Matrix
Mailable recipients     49
Bypassed recipients     10
Total                   59